# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION,**

       **Plaintiff,**

v.                                             Case No: 6:24-cv-1145-PGB-DCI

**GARDA CL SOUTHEAST, INC.,**

       **Defendant.**
_____/

## ORDER

This Consent Decree ("**Decree**") is made and entered into by and between the United States Equal Employment Opportunity Commission ("**Commission**" or the "**EEOC**"), and Garda CL Southeast, Inc. ("**Garda Southeast**") (hereinafter EEOC and Defendant collectively referred to as "**the Parties**"). Garda Southeast is an affiliated entity of Garda CL Atlantic, Inc.

## INTRODUCTION

1. The EEOC commenced this action on June 21, 2024, under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq. ("**ADA**"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("**ADAAA**"), Pub. L. No. 110–325, 122 Stat 3553 (2008) (codified as amended in scattered sections of 42 U.S.C.), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct alleged unlawful employment

    practices on the basis of disability, and to provide relief to Charging Party Richard Kauffmann ("**Mr. Kauffmann**").

2. Garda Southeast denies the allegations in the Complaint and denies that it violated the ADA. Garda Southeast fully cooperated in this matter to implement the provisions of this Decree. Garda Southeast enters this Decree without admission of liability or wrongdoing.

3. In the interest of resolving this matter, to avoid further cost of litigation, and as a result of having engaged in comprehensive settlement negotiations, the Parties have agreed that this action should be finally resolved without admission of liability by entry of this Decree. This Decree is final and binding on the Parties, and their respective successors and assigns.

4. No waiver, modification or amendment of any provision of this Decree will be effective unless made in writing and signed by an authorized representative of each of the Parties. By mutual agreement of the Parties, this Decree may be amended or modified in the interests of justice and fairness in order to effectuate the provisions of this Decree.

5. This Decree fully and finally resolves the claims asserted or that could have been asserted by the Commission related to Mr. Kauffmann and the underlying EEOC charge of discrimination, Charge No. 846-2020-01953.

6. This Decree constitutes the complete understanding between the Parties with respect to the matters herein.

7. If one or more provisions of this Decree are rendered unlawful or unenforceable, the Parties shall attempt to agree upon what amendments to this Decree, if any, are appropriate to effectuate the purposes of this Decree. In any event, the unaffected provisions will remain enforceable.

8. This Decree does not resolve any charges of discrimination that may be pending with the Commission against Garda Southeast other than the Charge referred to in paragraph 5. This Decree in no way affects the EEOC's right to bring, process, investigate or litigate other charges that may be in existence or that may later be filed against Garda Southeast in accordance with standard EEOC procedures.

9. Nothing in this Decree shall be construed to limit or reduce Garda Southeast's obligations to comply with the statutes enforced by EEOC: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., ("**Title VII**"), Title I of the Americans with Disabilities Act ("**ADA**"), 42 U.S.C. §12101, as amended, the Age Discrimination in Employment Act ("**ADEA**"), 29 U.S.C. §§621-633a, as amended, the Equal Pay Act ("**EPA**"), 29 U.S.C. §206(d), the Genetic Information Nondiscrimination Act of 2008 ("**GINA**"), 42 U.S.C. § 2000f; and the Pregnant Workers Fairness Act ("**PWFA**"), 42 U.S.C. §§ 2000gg.

## **FINDINGS**

10. Having carefully examined the terms and provisions of this Decree, and based on the pleadings, record, and stipulations of the Parties, the Court finds the following:

    a. This Court has jurisdiction over the subject matter of this action and the Parties;

    b. The Court will retain jurisdiction for the duration of this Decree;

    c. No party shall contest the jurisdiction of this Court to enforce this Decree and its terms or the right of the Commission to bring an enforcement suit upon alleged breach of any term(s) of this Decree;

    d. The terms of this Decree are adequate, fair, reasonable, equitable, and just. The rights of Mr. Kauffmann and the public interest are adequately protected by this Decree; and

    e. The terms of this Decree are and shall be binding upon the present and future representatives, agents, directors, officers, successors, heirs and assigns of Garda Southeast.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

## **DURATION OF DECREE**

11. This Decree shall be in effect for a period of three (3) years from the Effective Date.

12. This Decree will not expire while any enforcement action concerning this Decree is pending. The duration of this Decree shall be extended by any time period required for the resolution of any enforcement action.

## DEFINITIONS

13. **Deaf/Hard of Hearing Employees.** Abbreviated herein as "**D/HOH employee**." This means a Garda Southeast employee with a known and disclosed disability or is regarded as having a disability that substantially limits his or her hearing, as defined in the Americans with Disabilities Act, 42 U.S.C. § 12102.

14. **Qualified Interpreter.** For purposes of this Decree, a "qualified interpreter" means a sign language interpreter who, via a video remote interpreting service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, see 28 C.F.R. § 35.104. For the purpose of this Decree, a Certified Deaf Interpreter is also considered a qualified interpreter. Preference will be given to interpreters who hold a valid certification from the National Registry of Interpreters for the Deaf and Defendant will exercise reasonable efforts to utilize interpreters who hold a valid certification from the National Registry of Interpreters for the Deaf in hiring or contracting with interpreters.

15. **Video Remote Interpreting.** Abbreviated herein as "**VRI**." This means an interpreting service that uses video conference technology over dedicated

lines or wireless technology offering a high-speed, wide-bandwidth video connection that delivers high-quality video images as provided in 28 C.F.R. § 35.160(d).

## **MONETARY RELIEF**

16. Within ten (10) business days of the entry of this Decree, Garda Southeast shall pay monetary relief in the total amount of $37,500 in compensatory, non-wage amounts owed to Richard Kauffmann. The check will be sent directly to Mr. Kauffmann, and a photocopy of the checks and related correspondence will be emailed to EEOC Regional Attorney Kristen Foslid and EEOC Trial Attorney Erica Selig at mdoconsentdecreecompliance@eeoc.gov and at erica.selig@eeoc.gov. Garda Southeast will issue a Form 1099 for the compensatory amounts paid to him.

17. If Garda Southeast fails to make the payments described in paragraphs 16 above, then Garda Southeast agrees to pay interest on its defaulted payments at a rate calculated pursuant to 26 U.S.C. §6621(b) of the Internal Revenue Code until the same is paid, and to bear any additional costs incurred by the EEOC caused by the non-compliance or delay, including but not limited to any and all costs arising out of the EEOC's efforts to enforce this Decree in federal court.

## **INJUNCTIVE PROVISIONS**

18. Garda Southeast and all of its officers, managers, senior employees, agents, partners, successors, and assigns, are enjoined from engaging in any discrimination or retaliation of any kind against Richard Kauffmann or any other D/HOH person because they asserted any right under this Decree, including but not limited to requesting an accommodation.

19. Garda Southeast will provide reasonable accommodations, including but not limited to providing qualified interpreters, in-person or through VRI, at no expense to the applicant/employee, that are requested by D/HOH employees to participate in orientations; trainings; meetings with supervisors and human resources; performance reviews; disciplinary meetings; annual company meetings; meetings about work procedures, policies, and/or assignments; interviews and communication about interviews; and recreation events. Where necessary to determine the appropriate reasonable accommodation, Garda Southeast will initiate an interactive process with the D/HOH employee requesting an accommodation.

## **ACCESS TO QUALIFIED INTERPRETERS**

20. Within 30 days of the entry of this Decree, Garda Southeast will implement or supplement and maintain written policies which address the prohibition of disability discrimination under the Americans with Disabilities Act.

21. Garda Southeast will make available a qualified interpreter to any D/HOH employee whose effective means of communication is sign language in the following situations: (A) orientation; (B) work and job training; (B) any training for matters that are outside the routine day-to-day schedule; (C) meetings with supervisors including but not limited to performance reviews; (D) meetings with human resources; (D) disciplinary meetings; (E) annual company meetings; (F) meetings about work procedures, policies, and/or assignments; (G) interviews and communication about interviews; and (H) recreation events.

    a. The phrase "make available" includes making a qualified interpreter available by VRI, or by an on-site appearance. VRI will not be utilized when:

        i. the event at issue is long or complex (such as the annual company meetings); and/or

        ii. the D/HOH individual cannot fully access the communications effectively through VRI.

    b. To the extent that Garda Southeast provides qualified interpreters via VRI services, Garda Southeast will provide as required in 28 C.F.R. §35.160(d):

        i. Real-time, full-motion video and audio over a dedicated high-speed, wideband width video connection or wireless connection that delivers high-quality video images that do not produce

8

          lags, choppy, blurry, or grainy images, or irregular pauses in communication;

    ii.    A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position;

    iii.    A clear, audible transmission of voices;

    iv.    Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI; and

    v.    Use of the VRI equipment in a location which safeguards the employee's privacy, to the same extent as any non-disabled employee's privacy is protected.

    c.    Reasonable consideration will be given to the D/HOH employees' expressed preference for an in-person, onsite interpreter.

22.    D/HOH employees shall be provided with the contact information of a designated HR professional who will help handle any complaints or address concerns regarding access to qualified interpreters including but not limited to the D/HOH employee being denied an interpreter; and interpreting services not being provided in the manner consistent with paragraph 20. At the time of entering this Decree, D/HOH employees, including but not limited to Mr. Kauffmann, shall contact Paola Marachly,

███████████████████. Should this designated HR professional change, such change will be communicated by Garda Southeast through your Human Resources business partner.

## TRAINING

23. <u>Training on Access to Qualified Interpreters</u>. Within two months from the entry of this Decree, Garda Southeast will provide all Garda Southeast branch managers; all Human Resources field personnel; and all D/HOH employees virtual training on the provision a qualified interpreter as a reasonable accommodation for D/HOH employees. The training will include how to efficiently and effectively set up and operate VRI. The training will also include how and when to procure an on-site interpreter in accordance with paragraphs 20-22. The training will be conducted by a subject matter expert, subject to approval by the EEOC. The training will be memorialized in video and/or memorandum format so that employees can later access it as needed. Garda Southeast will maintain attendance records identifying the name and job title of the attendees at each session. Within five days of the training, Garda Southeast will forward to EEOC a copy of the attendance records from the training session.

24. <u>Training on Deaf Culture or Employment Training</u>. During the initial year of the Consent Decree, Garda Southeast shall provide all of its Branch managers, field human resources personnel, and other individuals involved in hiring with at least thirty (30) minutes of online learning courses or live

interactive training on issues related to deaf culture, employment, and/or professional interactions with deaf and hard of hearing employees ("**Deaf Culture or Employment Training**"). Deaf Culture or Employment Training shall encompass the following topics: (1) raising awareness about issues affecting the deaf community; (2) identifying how deaf and hard of hearing individuals communicate; (3) identifying the technology available that could enhance communication with deaf and hard of hearing applicants and/or employees; (5) identifying and addressing issues that face deaf and hard of hearing applicants; and (6) dispelling stereotypes associated with working with or considering for hire, deaf or hard of hearing individuals. The Deaf Culture or Employment Training shall be conducted by a Subject Matter Expert, mutually agreed upon with EEOC. The training will be memorialized in video and/or memorandum format so that new employees can later access it. Within five days of the training, Garda Southeast will forward to EEOC a copy of the attendance records from the training session, and a copy of the video recording.

## NOTICE

25. Within ten (10) days after the Effective Date, Garda Southeast shall post a laminated copy of the Notice attached as Exhibit A in all of its locations. The Notices shall each be posted in a conspicuous location easily accessible to and commonly frequented by Garda Southeast's employees. The Notice shall remain posted for the duration of the Decree, and Garda shall take

11

reasonable steps to ensure that the posting is not altered, defaced, or covered by any other material. Garda Southeast shall certify to EEOC in writing within fifteen (15) business days after this Decree that the Notices have been properly posted.

## REPORTING

26. On March 15 and September 15, annually, Garda Southeast shall provide the EEOC with written reports that shall contain:

    a. A certification that Garda Southeast have completed all training required by the Decree and that a copy of the qualified interpreter training (whether in video or memorandum form) is still available for employees upon request and a copy of the Deaf culture training (whether in video or memorandum form) is still available for new employees;

    b. A certification that the Notices remained posted for the entire period as required by the Decree;

    c. A report showing when Mr. Kauffmann was provided with an interpreter, to include the date on which the interpret was provided, the type of event that the interpreter was provided for, and whether the interpreter was remote or in-person; and

    d. Garda Southeast shall report to the EEOC written complaints sent to designated HR professional as described in paragraph 21, if any, and

the report will include the following: description of the complaint, and description of Garda Southeast's response to the complaint.

## NOTIFICATION OF SUCCESSORS

27. Garda Southeast shall provide prior written notice to any potential purchaser of its business and to any other potential successor of the existence and contents of the Decree.

## TAX TREATMENT OF SETTLEMENT AMOUNT

28. <u>EEOC's reporting requirements under IRC Sections 162(f) and 6050X</u>. The EEOC may be required to report the fact of this settlement to the IRS under Section 162(f) and 6050X of the Internal Revenue Code which allow for certain payments by employers to be deducted from the employer's taxes. If the EEOC is required to do so, the EEOC will provide the employer with a copy of the 1098-F form that it will provide to the Internal Revenue Service (IRS).

29. Garda Southeast's EIN is: 58-1695811.

30. The individual to whom the EEOC should mail a copy of the form 1098-F, if the EEOC is required to issue one is: Legal Department, Garda CL Southeast, Inc., attn: Brett Kaplan, 2000 Corporate Blvd NW, Boca Raton, FL 33431.

31. <u>No Representations or Reliance</u>. The EEOC has made no representations regarding whether the amount paid pursuant to this settlement qualifies for the deduction under the Internal Revenue Code. The provision of the Form 1098-F by the EEOC does not mean that the requirements to claim a

13

deduction under the Internal Revenue Code have been met. Any decision about a deduction pursuant to the Internal Revenue Code will be made solely by the IRS with no input from the EEOC. The parties are not acting in reliance on any representations made by the EEOC regarding whether the amounts paid pursuant to this agreement qualify for a deduction under the Internal Revenue Code.

## **COMPLIANCE**

32. The EEOC may review compliance with this Decree at any time during its duration.

33. If at any time during the duration of this Decree the EEOC believes that Garda Southeast is in violation of this Decree, the EEOC may request documents from Garda Southeast and/or interview Garda Southeast employees. EEOC shall make any such request by sending Garda Southeast written notice of the request and the alleged Consent Decree violation(s) to Legal Department, Garda CL Southeast, Inc., attn: Brett Kaplan, 2000 Corporate Blvd NW, Boca Raton, FL 33431. Garda Southeast will have a period of fifteen (15) calendar days to cure the alleged violation(s), which may be extended upon agreement of the Parties. Thereafter, the parties shall follow the Dispute Resolution Procedure set forth in paragraphs 34-35 below.

## DISPUTE RESOLUTION

34. In the event that EEOC believes that Garda Southeast has failed to comply with any provision(s) of the Decree, EEOC shall notify Garda Southeast in writing of the alleged breach or failure to comply and provide Garda Southeast with an opportunity to respond and make a good faith attempt to cure any breach of the Decree within fifteen (15) calendar days of notification. The Parties may jointly agree to extend the fifteen (15) day cure period. The fifteen (15) days to cure provision of this Paragraph shall not apply, however, to the payment required by paragraphs 16-17 above.

35. Following the fifteen (15) day cure period, EEOC shall have the right to enforce the Decree and/or remedy any breach in the Middle District of Florida.

## NO CONDITIONAL RECEIPT

36. Garda Southeast will not condition the receipt of individual relief on an individual's agreement to (a) maintain as confidential the terms of this Consent Decree; (b) waive his statutory right to file a charge with any federal or state anti-discrimination agency; or (c) waive his right to apply for a position with Garda Southeast .

## COSTS

37. Each party to this Decree shall bear its own costs associated with this litigation.

In accordance with the aforementioned terms of the Consent Decree, the Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on June 28, 2024.

*[Signature]*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties



# EXHIBIT A

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

The Americans with Disabilities Act ("the ADA") makes it unlawful for an employer to discriminate against any qualified individual because of a disability. This includes discrimination in job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. Under the ADA, the term "discriminate" includes not hiring or referring individuals with disabilities and not making reasonable accommodations for qualified applicants and employees.

The term "reasonable accommodation" may include: providing qualified readers or interpreters including American Sign Language Interpreters; making existing facilities used by employees readily accessible to and usable by individuals with disabilities; job restructuring, part-time or modified work schedules; reassignment to a vacant position; acquisition or modification of equipment or devices; appropriate adjustment or modifications of examination, training materials or policies; and other similar accommodations for individuals with disabilities.

In accordance with the applicable law, GARDA SOUTHEAST will not deny reasonable accommodations to individuals with disabilities nor otherwise violate the ADA.

If you need an accommodation for a disability, you may contact a supervisor, a manager, or Paola Marachly, at ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ or phone at ▒▒▒▒▒▒▒▒▒▒.

In addition, employees or job applicants should feel free to report instances of discriminatory treatment to a supervisor, a manager, or Human Resources at 800-461-9330 or at garda.com/ethicshotline at any time. GARDA SOUTHEAST has established policies and procedures to promptly investigate any such reports and to protect the person making the reports from retaliation, including retaliation by the person allegedly guilty of the discrimination.

Individuals are also free to make complaints of employment discrimination directly to the EEOC at publicportal.eeoc.gov/Portal/Login.aspx. General information may also be obtained on the Internet at www.eeoc.gov.

SIGNED this _____ day of _____, 2023.

_____

Senior Vice President – Human Resources

***<u>DO NOT REMOVE THIS NOTICE BEFORE THREE YEARS FROM DATE OF SIGNATURE</u>***